JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JOHN UTESCH, Individually and on Behalf of all Others Similarly Situated

**DEFENDANTS**
LANNETT COMPANY, INC., ARTHUR P. BEDROSIAN, and MARTIN P. GALVAN

**(b)** County of Residence of First Listed Plaintiff   Lake County, Indiana
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jacob A. Goldberg, Esquire (215-600-2817)
The Rosen Law Firm, P.A.
101 Greenwood Ave, Ste 400, Jenkintown, PA 19046

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 690 Other | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | **PERSONAL INJURY** | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | ☐ 365 Personal Injury - | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 367 Health Care/ | ☐ 840 Trademark | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Pharmaceutical | | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Personal Injury | **LABOR** | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | Product Liability | ☐ 710 Fair Labor Standards | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 368 Asbestos Personal | Act | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Injury Product | ☐ 720 Labor/Management | ☒ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | Liability | Relations | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | **PERSONAL PROPERTY** | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 370 Other Fraud | ☐ 751 Family and Medical | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | ☐ 371 Truth in Lending | Leave Act | ☐ 893 Environmental Matters |
| | Medical Malpractice | ☐ 380 Other Personal | ☐ 790 Other Labor Litigation | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | Property Damage | ☐ 791 Employee Retirement | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 385 Property Damage | Income Security Act | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | Product Liability | | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | **PRISONER PETITIONS** | **FEDERAL TAX SUITS** | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 870 Taxes (U.S. Plaintiff | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 463 Alien Detainee | or Defendant) | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 510 Motions to Vacate | ☐ 871 IRS—Third Party | State Statutes |
| | Employment | Sentence | 26 USC 7609 | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 530 General | | |
| | Other | ☐ 535 Death Penalty | **IMMIGRATION** | |
| | ☐ 448 Education | **Other:** | ☐ 462 Naturalization Application | |
| | | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | |
| | | ☐ 550 Civil Rights | Actions | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - | | |
| | | Conditions of | | |
| | | Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 USC 78(b) and §78t(a))
Brief description of cause:
Defendants allegedly engaged in activities in violation of the Securities Laws

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*

JUDGE

DOCKET NUMBER

DATE 11/16/2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #           AMOUNT           APPLYING IFP           JUDGE           MAG. JUDGE

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:  7401 Bell St , Schererville, IN 46375

Address of Defendant:  9000 State Road, Philadelphia, Pennsylvania 19136

Place of Accident, Incident or Transaction:  Pennsylvania

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))        Yes☐  No☒

Does this case involve multidistrict litigation possibilities?        Yes☒  No☐

*RELATED CASE, IF ANY:*

Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
    Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
    Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
    Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
    Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☒ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I,  Jacob A. Goldberg , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE:  11/16/2016            _____            66399
                                              Attorney-at-Law            Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:  11/16/2016            _____            66399
                                              Attorney-at-Law            Attorney I.D.#

CIV. 609 (5/2012)

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _7401 Bell St., Schererville, IN 46375_

Address of Defendant: _9000 State Road, Philadelphia, Pennsylvania 19136_

Place of Accident, Incident or Transaction: _Pennsylvania_

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))                   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?                                          Yes☒   No☐

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                                      Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
                                                                      Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
                                                                      Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
                                                                      Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☒ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
     (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
     (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _Jacob A. Goldberg_, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _11/16/2016_          _____          _66399_
                        Attorney-at-Law              Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _11/16/2016_          _____          _66399_
                        Attorney-at-Law              Attorney I.D.#

CIV. 609 (5/2012)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| JOHN UTESCH, Individually and on Behalf of All Others Similarly Situated | : | CIVIL ACTION |
| v. | : | |
| LANNETT COMPANY, INC., et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                                                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                                                       ( X )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           ( )


| 11/16/2016 | | John Utesch |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-600-2817 | 212-202-3827 | jgoldberg@rosenlegal.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN UTESCH, Individually and on Behalf of All Others Similarly Situated, | **Civil Action No.:** |
| Plaintiff(s), | **CLASS ACTION** |
| v. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| LANNETT COMPANY, INC., ARTHUR P. BEDROSIAN, and MARTIN P. GALVAN, | |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff John Utesch ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Lannett Company, Inc. ("Lannett" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Lannett securities between September 12, 2013 and November 3, 2016, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the Company conducts business in this district and maintains its headquarters in this district.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying Certification, purchased Lannett securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.      Defendant Lannett develops, manufactures, packages, markets, and distributes generic versions of brand pharmaceutical products in the United States. The Company is incorporated in Delaware with principal executive offices located at 9000 State Road Philadelphia, Pennsylvania 19136. The Company's common stock trades on the NYSE under the ticker symbol "LCI".

8.      Defendant Arthur P. Bedrosian ("Bedrosian") has been the Chief Executive Officer ("CEO") of Lannett since January 3, 2006 and served as its President from May 2002 to December 1, 2014. Defendant Bedrosian served as the Vice President of Business Development at Lannett from January 2002 to April 2002, and as a Director from February 2000 to January 2002.

9.      Defendant Martin P. Galvan ("Galvan") has been the Chief Financial Officer ("CFO") and Vice President of Finance and Treasurer at Lannett since August 8, 2011.

10.      Defendants Bedrosian and Galvan are sometimes referred to herein as the "Individual Defendants."

11.      Each of the Individual Defendants:

(a)      directly participated in the management of the Company;

(b)      was directly involved in the day-to-day operations of the Company at the highest levels;

     (c)     was privy to confidential proprietary information concerning the Company and its business and operations;

     (d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

     (e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

     (f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

     (g)     approved or ratified these statements in violation of the federal securities laws.

12.     Lannett is liable for the acts of the Individual Defendants and their employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.     The scienter of the Individual Defendants and other employees and agents of Lannett are similarly imputed to Lannett under *respondeat superior* and agency principles.

14.     Defendant Lannett and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

15.     On September 12, 2013, the Company filed a Form 10-K for the fiscal year ended June 30, 2013 (the "2013 10-K") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial

reporting and disclosure controls and procedures were effective as of June 30, 2013. The 2013 10-K was signed by Defendants Bedrosian and Galvan. The 2013 10-K also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Bedrosian and Galvan attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

16.     The 2013 10-K discussed the strategies utilized by Lannett to grow its business, stating in pertinent part:

**Business Strategies**

*Continue to Broaden our Product Lines Through Internal Development and Strategic Partnerships.* We are focused on increasing our market share in the generic pharmaceutical industry while concentrating additional resources on the development of new products, with an emphasis on controlled substance products. We continue to improve our financial performance by expanding our line of generic products, increasing unit sales to current customers, creating manufacturing efficiencies, and managing our overhead and administrative costs.

We have targeted four strategies for expanding our product offerings: (1) deploying our experienced R&D staff to develop products in-house, (2) entering into product development agreements or strategic partnerships with third-party product developers and formulators, (3) purchasing ANDAs from other generic manufacturers and (4) marketing drugs under brand names. We expect that each method will facilitate our identification, selection and development of additional generic pharmaceutical products that we may distribute through our existing network of customers.

We have several existing supply and development agreements with both international and domestic companies, and are currently in negotiations on similar agreements with additional companies, through which we can market and distribute future products. We intend to capitalize on our strong customer relationships to build our market share for such products.

*Improve our Operating Profile in Certain Targeted Specialty Markets.* In certain situations, we may increase our focus on particular specialty markets within the generic pharmaceutical industry. By narrowing our focus to specialty markets, we can provide product alternatives in categories with relatively fewer market participants. We plan to strengthen our relationships with strategic partners, including providers of product development research, raw materials, APIs and finished products. We believe that mutually beneficial strategic relationships in

5

such areas, including potential financing arrangements, partnerships, joint ventures or acquisitions, could enhance our competitive advantages in the generic pharmaceutical market.

17.     The 2013 10-K discussed Lannett's "competitive advantages" and certain Company driven implementations that "have improved [Lannett's] competitive cost position over the past five years", stating in pertinent part:

**Competition**

The manufacturing and distribution of generic pharmaceutical products is a highly competitive industry.  Competition is based primarily on price.  In addition to competitive pricing our competitive advantages are our ability to provide strong and dependable customer service by maintaining adequate inventory levels, employing a responsive order filling system and prioritizing timely fulfillment of orders.  We ensure that our products are available from national suppliers as well as our own warehouse.  The modernization of our facilities, hiring of experienced staff and implementation of inventory and quality control programs have improved our competitive cost position over the past five years.

18.     On August 29, 2014, the Company filed a Form 10-K for the fiscal year ended June 30, 2014 (the "2014 10-K") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of June 30, 2014. The 2014 10-K was signed by Defendants Bedrosian and Galvan. The 2014 10-K also contained signed SOX certifications by Defendants Bedrosian and Galvan attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

19.     The 2014 10-K discussed the strategies utilized by Lannett to grow its business, stating in pertinent part:

**Business Strategies**

*Continue to Broaden our Product Lines Through Internal Development and Strategic Partnerships.* We are focused on increasing our market share in the generic pharmaceutical industry while concentrating additional resources on the development of new products, with an emphasis on controlled substance products. We continue to improve our financial performance by expanding our line of generic products, increasing unit sales to current customers, creating manufacturing efficiencies, and managing our overhead and administrative costs.

We have targeted four strategies for expanding our product offerings: (1) deploying our experienced R&D staff to develop products in-house, (2) entering into product development agreements or strategic partnerships with third-party product developers and formulators, (3) purchasing ANDAs from other generic manufacturers and (4) marketing drugs under brand names. We expect that each method will facilitate our identification, selection and development of additional generic pharmaceutical products that we may distribute through our existing network of customers.

We have several existing supply and development agreements with both international and domestic companies, and are currently in negotiations on similar agreements with additional companies, through which we can market and distribute future products. We intend to capitalize on our strong customer relationships to build our market share for such products.

*Improve our Operating Profile in Certain Targeted Specialty Markets.* In certain situations, we may increase our focus on particular specialty markets within the generic pharmaceutical industry. By narrowing our focus to specialty markets, we can provide product alternatives in categories with relatively fewer market participants. We plan to strengthen our relationships with strategic partners, including providers of product development research, raw materials, APIs and finished products. We believe that mutually beneficial strategic relationships in such areas, including potential financing arrangements, partnerships, joint ventures or acquisitions, could enhance our competitive advantages in the generic pharmaceutical market.

20.     The 2014 10-K discussed Lannett's "competitive advantages" and certain

Company driven implementations that "have improved [Lannett's] competitive cost position

over the past five years", stating in pertinent part:

**Competition**

The manufacturing and distribution of generic pharmaceutical products is a highly competitive industry. Competition is based primarily on price. In addition to competitive pricing our competitive advantages are our ability to provide strong and dependable customer service by maintaining adequate inventory levels,

employing a responsive order filling system and prioritizing timely fulfillment of orders.  We ensure that our products are available from national suppliers as well as our own warehouse.  The modernization of our facilities, hiring of experienced staff and implementation of inventory and quality control programs have improved our competitive cost position over the past five years.

21.    On August 27, 2015, the Company filed a Form 10-K for the fiscal year ended June 30, 2015 (the "2015 10-K") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of June 30, 2015. The 2015 10-K was signed by Defendants Bedrosian and Galvan. The 2015 10-K also contained signed SOX certifications by Defendants Bedrosian and Galvan attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

22.    The 2015 10-K discussed the strategies utilized by Lannett to grow its business, stating in pertinent part:

**Business Strategies**

*Continue to Broaden our Product Lines Through Internal Development and Strategic Partnerships.*

We are focused on increasing our market share in the generic pharmaceutical industry while concentrating additional resources on the development of new products, with an emphasis on controlled substance products.  We continue to improve our financial performance by expanding our line of generic products, increasing unit sales to current customers, creating manufacturing efficiencies, and managing our overhead and administrative costs.

We have targeted four strategies for expanding our product offerings: (1) deploying our experienced R&D staff to develop products in-house, (2) entering into product development agreements or strategic partnerships with third-party product developers and formulators, (3) purchasing ANDAs from other generic manufacturers and (4) marketing drugs under brand names. We expect that each strategy will facilitate our identification, selection and

development of additional generic pharmaceutical products that we may distribute through our existing network of customers.

Key highlights related to product developments during Fiscal 2015 included the Company acquiring two ANDAs, Estradiol Tablets, USP, 0.5 mg, 1 mg, and 2 mg and Selegiline Hydrochloride Capsules 5 mg, as well as the Company entering into several new distribution agreements including an agreement with Symplemed, Inc. to be the exclusive distributor in the United States of an authorized generic version of ACEON® (perindopril erbumine tablets) in 2 mg, 4 mg, and 8 mg dosage strengths.

We have several existing supply and development agreements with both international and domestic companies, and are currently in negotiations on similar agreements with additional companies, through which we can market and distribute future products.  We intend to capitalize on our strong customer relationships to build our market share for such products.

*        *        *

*Improve our Operating Profile in Certain Targeted Specialty Markets.*

In certain situations, we may increase our focus on particular specialty markets within the generic pharmaceutical industry.  By narrowing our focus to specialty markets, we can provide product alternatives in categories with relatively fewer market participants.  We plan to strengthen our relationships with strategic partners, including providers of product development research, raw materials, APIs and finished products.  We believe that mutually beneficial strategic relationships in such areas, including potential financing arrangements, partnerships, joint ventures or acquisitions, could enhance our competitive advantages in the generic pharmaceutical market.

23.     The 2015 10-K discussed Lannett's "competitive advantages" and certain Company driven implementations that "have improved [Lannett's] competitive cost position over the past five years", stating in pertinent part:

**Competition**

The manufacturing and distribution of generic pharmaceutical products is a highly competitive industry.  Competition is based primarily on price.  In addition to competitive pricing, our competitive advantages are our ability to provide strong and dependable customer service by maintaining adequate inventory levels, employing a responsive order filling system and prioritizing timely fulfillment of orders.  We ensure that our products are available from national suppliers as well as our own warehouse.  The modernization of our facilities, hiring of experienced

9

staff and implementation of inventory and quality control programs have improved our competitive cost position over the past five years.

24.      On August 29, 2016, the Company filed a Form 10-K for the fiscal year ended June 30, 2016 (the "2016 10-K") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of June 30, 2016. The 2016 10-K was signed by Defendants Bedrosian and Galvan. The 2016 10-K also contained signed SOX certifications by Defendants Bedrosian and Galvan attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

25.      The 2016 10-K discussed the strategies utilized by Lannett to grow its business, stating in pertinent part:

**Business Strategies**

*Continue to Broaden our Product Lines Through Internal Development and Strategic Partnerships.*

We are focused on increasing our market share in the generic pharmaceutical industry while concentrating additional resources on the development of new products, with an emphasis on controlled substance products. We continue to improve our financial performance by expanding our line of generic products, increasing unit sales to current customers, creating manufacturing efficiencies and managing our overhead and administrative costs.

We have four strategies for expanding our product offerings: (1) deploying our experienced R&D staff to develop products in-house; (2) entering into product development agreements or strategic alliances with third-party product developers and formulators; (3) purchasing ANDAs from other generic manufacturers; and (4) marketing drugs under brand-names. We expect that each strategy will facilitate our identification, selection and development of additional pharmaceutical products that we may distribute through our existing network of customers.

10

Key highlights related to product developments during Fiscal 2016 included the Company announcing a strategic partnership with YiChang HEC ChangJiang Pharmaceutical Co., Ltd, an HEC Group company, to co-develop a generic insulin pharmaceutical product for the U.S. market. The product is currently in late stage development. The Company will manage the remaining clinical and regulatory steps specific for a U.S. Food and Drug Administration (FDA) license to market and will have the exclusive U.S. marketing rights to the product.

We have several existing supply and development agreements with both international and domestic companies; in addition, we are currently in negotiations on similar agreements with additional companies through which we can market and distribute future products. We intend to capitalize on our strong customer relationships to build our market share for such products.

*     *     *

*Improve our Operating Profile in Certain Targeted Specialty Markets.*

In certain situations, we may increase our focus on particular specialty markets within the generic pharmaceutical industry. By narrowing our focus to specialty markets, we can provide product alternatives in categories with relatively fewer market participants. We plan to strengthen our relationships with strategic partners, including providers of product development research, raw materials, APIs and finished products. We believe that mutually beneficial strategic relationships in such areas, including potential financing arrangements, partnerships, joint ventures or acquisitions, could enhance our competitive advantages in the generic pharmaceutical market.

26.     The 2016 10-K discussed Lannett's "competitive advantages" and certain Company driven implementations that "have improved [Lannett's] competitive cost position", stating in pertinent part:

**Competition**

The manufacturing and distribution of generic pharmaceutical products is a highly competitive industry. Competition is based primarily on price. In addition to competitive pricing, our competitive advantages are our ability to provide strong and dependable customer service by maintaining adequate inventory levels, employing a responsive order filling system and prioritizing timely fulfillment of orders. We ensure that our products are available from national suppliers as well as our own warehouse. The modernization of our facilities, hiring of experienced staff and implementation of inventory and quality control programs have improved our competitive cost position.

27.     The statements referenced in ¶¶ 15 – 26 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Lannett's drug pricing relied on unsustainable pricing methodologies; (2) Lannett lacked effective internal controls concerning its drug pricing methodologies; (3) as a result, Lannett's public statements were materially false and misleading at all relevant times and spurred ongoing investigations by the State of Connecticut Office of the Attorney General and the U.S. Department of Justice ("DOJ"). Media outlets reported that the underlying conduct would likely lead U.S. prosecutors to file criminal charges against Lannett by the end of 2016 for suspected price collusion.

## The Truth Emerges

28.     On July 16, 2014, Lannett issued a press release titled "Lannett Receives Inquiry from Connecticut Attorney General" revealing that "it has received interrogatories and subpoena from the State of Connecticut Office of the Attorney General concerning its investigation into pricing of digoxin", stating in pertinent part:

### Lannett Receives Inquiry from Connecticut Attorney General

July 16, 2014 11:33 AM Eastern Daylight Time

PHILADELPHIA--(BUSINESS WIRE)--Lannett Company, Inc. (NYSE: LCI) today announced that it has received interrogatories and subpoena from the State of Connecticut Office of the Attorney General concerning its investigation into pricing of digoxin. According to the subpoena, the Connecticut Attorney General is investigating whether anyone engaged in any activities that resulted in (a) fixing, maintaining or controlling prices of digoxin or (b) allocating and dividing customers or territories relating to the sale of digoxin in violation of Connecticut antitrust law. The Company maintains that it acted in compliance with all applicable laws and regulations and intends to cooperate with the Connecticut Attorney General's investigation.

12

29.     On this news, shares of Lannett fell $10.13 per share, or approximately 22%, over two trading days to close at $36.96 per share on July 17, 2014, damaging investors.

30.     On November 6, 2014, the Company filed a Form 10-Q for the period ended September 30, 2014 revealing that "the Senior Vice President of Sales and Marketing of the Company was served with a grand jury subpoena relating to a federal investigation of the generic pharmaceutical industry into possible violations of the Sherman Act", stating in pertinent part:

Federal Investigation into the Generic Pharmaceutical Industry

On November 3, 2014, the Senior Vice President of Sales and Marketing of the Company was served with a grand jury subpoena relating to a federal investigation of the generic pharmaceutical industry into possible violations of the Sherman Act. The subpoena requests corporate documents of the Company relating to communications or correspondence with competitors regarding the sale of generic prescription medications, but is not specifically directed to any particular product and is not limited to any particular time period. The Company maintains that it has acted in compliance with all applicable laws and regulations and intends to cooperate with the federal investigation.

31.     On this news, shares of Lannett fell $2.98 per share, or approximately 5.6%, over two trading days to close at $50.17 per share on November 7, 2014, damaging investors.

32.     On December 8, 2014, during aftermarket hours, the Company filed a Form 8-K with the SEC revealing that "the Company was served with a grand jury subpoena related to the continuing federal investigation of the generic pharmaceutical industry into possible violations of the Sherman Act", stating in pertinent part:

On December 5, 2014, the Company was served with a grand jury subpoena related to the continuing federal investigation of the generic pharmaceutical industry into possible violations of the Sherman Act. The subpoena requests corporate documents from the Company relating to corporate, financial, and employee information, communications or correspondence with competitors regarding the sale of generic prescription medications, and the marketing, sale, or pricing of certain products.

13

33.     On this news, shares of Lannett fell $6.08 per share, or approximately 12.6%, over two trading days to close at $41.92 per share on December 10, 2014, damaging investors.

34.     On November 3, 2016, *Bloomberg* published an article titled "U.S. Charges in Generic-Drug Probe to Be Filed by Year-End", revealing that in connection with the DOJ's investigation of a dozen companies, including Lannett, U.S. prosecutors may file criminal charges by the end of 2016 for suspected price collusion, stating in pertinent part:

### U.S. Charges in Generic-Drug Probe to Be Filed by Year-End

November 3, 2016 — 2:10 PM EDT

U.S. prosecutors are bearing down on generic pharmaceutical companies in a sweeping criminal investigation into suspected price collusion, a fresh challenge for an industry that's already reeling from public outrage over the spiraling costs of some medicines.

The antitrust investigation by the Justice Department, begun about two years ago, now spans more than a dozen companies and about two dozen drugs, according to people familiar with the matter. **The grand jury probe is examining whether some executives agreed with one another to raise prices, and the first charges could emerge by the end of the year, they said.**

Though individual companies have made various disclosures about the inquiry, they have identified only a handful of drugs under scrutiny, including a heart treatment and an antibiotic. **Among the drugmakers to have received subpoenas are industry giants** Mylan NV and Teva Pharmaceutical Industries Ltd. Other companies include Actavis, which Teva bought from Allergan Plc in August, **Lannett Co.**, Impax Laboratories Inc., Covis Pharma Holdings Sarl, Sun Pharmaceutical Industries Ltd., Mayne Pharma Group Ltd., Endo International Plc's subsidiary Par Pharmaceutical Holdings and Taro Pharmaceutical Industries Ltd.

\*        \*        \*

Allergan, Impax and Sun declined to comment beyond their filings. Representatives of Endo, Covis, Taro and **Lannett didn't respond to requests for comment**. A Justice Department spokesman declined to comment.

Shares of all companies named in the investigation fell on the news. **Lannett dropped 27 percent to close at $17.25 in New York trading**. Impax fell 20 percent to $16.50. Endo declined 19 percent to $14.63, while Teva slipped

9.5 percent to $39.20, Allergan fell 4.6 percent to $188.82 and Mylan fell 6.9 percent to $34.14. Shares of Concordia International Corp., which bought most of Covis's assets, fell 5.6 percent to 4.37 Canadian dollars. Taro shares fell 7.3 percent to $93.68.

*　　　*　　　*

**Doxycycline, Digoxin**

Mylan, Mayne and Par have said they've been asked about doxycycline. The drug is also made by Actavis, Sun and Lannett, which haven't disclosed whether they've been asked about it.

**Impax, Lannett, Par and Sun all make digoxin**, while Covis makes the branded version, called Lanoxin, which it sold to Concordia in 2015. Though Mylan makes a branded version of digoxin, it hasn't been subpoenaed over that drug, according to a spokeswoman.

**Digoxin prices increased nearly sevenfold in late 2013. Lannett raised the list price to $1.185 a pill from 17 cents on Oct. 16, 2013, for a 100 pack of 250 microgram tablets, according to data from First Databank compiled by Bloomberg. Six days later, Impax matched Lannett's price, up from 14 cents a pill. At the time, the two companies dominated the market.**

Par introduced its own version to the market in January 2014, also at $1.185 a pill. In March 2015, Sun Pharma followed suit. The list price doesn't take into account discounts or rebates that the manufacturers negotiate confidentially with pharmacies and other purchasers. **Impax, Lannett and Par have all disclosed receiving inquiries about digoxin.**

[Emphasis added].

35.　　　On this news, shares of Lannett fell $6.25 per share, or approximately 27%, from its previous closing price to close at $17.25 per share on November 3, 2016, damaging investors.

36.　　　As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Lannett common stock traded on the NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

38.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Lannett common stock were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Lannett or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

41.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of Lannett;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused Lannett to issue false and misleading SEC filings and public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

- whether the prices of Lannett common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

43.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

17

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Lannett common stock are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

- Plaintiff and members of the Class purchased and/or sold Lannett common stock between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

44.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

45.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

18

47.     This Count is asserted against Lannett and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

48.     During the Class Period, Lannett and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

49.     Lannett and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Lannett common stock during the Class Period.

50.     Lannett and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Lannett were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Lannett, their control over, and/or receipt and/or modification of Lannett allegedly materially misleading statements, and/or their associations with the Company which made them privy to

19

confidential proprietary information concerning Lannett, participated in the fraudulent scheme alleged herein.

51.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Lannett personnel to members of the investing public, including Plaintiff and the Class.

52.     As a result of the foregoing, the market price of Lannett common stock was artificially inflated during the Class Period. In ignorance of the falsity of Lannett's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Lannett common stock during the Class Period in purchasing Lannett common stock at prices that were artificially inflated as a result of Lannett's and the Individual Defendants' false and misleading statements.

53.     Had Plaintiff and the other members of the Class been aware that the market price of Lannett common stock had been artificially and falsely inflated by Lannett's and the Individual Defendants' misleading statements and by the material adverse information which Lannett's and the Individual Defendants did not disclose, they would not have purchased Lannett's common stock at the artificially inflated prices that they did, or at all.

54.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

55.     By reason of the foregoing, Lannett and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the

plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Lannett common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

56.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     During the Class Period, the Individual Defendants participated in the operation and management of Lannett, and conducted and participated, directly and indirectly, in the conduct of Lannett's business affairs. Because of their senior positions, they knew the adverse non-public information regarding Lannett's business practices.

58.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Lannett's financial condition and results of operations, and to correct promptly any public statements issued by Lannett which had become materially false or misleading.

59.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Lannett disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Lannett to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Lannett within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Lannett common stock.

21

60.     Each of the Individual Defendants, therefore, acted as a controlling person of Lannett. By reason of their senior management positions and/or being directors of Lannett, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Lannett to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Lannett and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

61.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Lannett.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

22

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: November 16, 2016

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: _____
Jacob A. Goldberg, (PA ID: 66399)
Gonen Haklay (PA ID: 764446)
101 Greenwood Avenue, Suite 203
Jenkintown, PA 19046
Tel:  (215) 600-2817
Fax: (212) 202-3827
jgoldberg@rosenlegal.com
ghaklay@rosenlegal.com

**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen, Esq.
Phillip Kim, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
lrosen@rosenlegal.com
pkim@rosenlegal.com

***Counsel for Plaintiff***

23

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Lannett Co. Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Lannett Co. Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

| | |
|---|---|
| **First name:** | John |
| **Middle initial:** | R |
| **Last name:** | Utesch |
| **Entity:** | John R Utesch |
| **Address:** | |
| **City:** | |
| **State:** | |
| **Zip:** | |
| **Country:** | |
| **Facsimile:** | |
| **Phone:** | |
| **Email:** | |



Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 02/13/2015 | 50 | 57.73 |
| Common Stock | 03/25/2015 | 75 | 65.25 |

Sales:

| Type of Security | Sale Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 03/15/2015 | 50 | 67.70 |

**Certification for John Utesch (cont.)**

7.  I have not served as a representative party on behalf of a class under the federal securities laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate:          YES

By clicking on the button below, I intend to sign and execute this agreement and retain the Rosen Law Firm, P.A. to proceed on Plaintiff's behalf, on a contingent fee basis.          YES

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 11/14/2016